# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ROGER LEE HENDRICKS,     :     CIVIL NO.: 1:20-CV-01045
                     :
         Plaintiff,     :     (Magistrate Judge Schwab)
    v.                  :
                     :
KILOLO KIJAKAZI,[1]     :
Acting Commissioner of     :
Social Security,     :
                     :
        Defendant.     :

## MEMORANDUM OPINION

### I. Introduction.

This is a social security action brought under 42 U.S.C. §§ 405(g).  Roger Lee Hendricks ("Hendricks") seeks judicial review of the final decision of the Commissioner of Social Security denying his claim for supplemental security income benefits.  Because the Commissioner's decision is supported by substantial evidence, the court will affirm the Commissioner's decision.

---

[1] Kiolo Kijakazi is now the Commissioner of Social Security, and she is automatically substituted as the defendant in this action. *See* Fed. R. Civ. P. 25(d) (providing that when a public officer sued in his or her official capacity ceases to hold office while the action is pending, "[t]he officer's successor is automatically substituted as a party"); 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

## II.  Background and Procedural History.

We refer to the transcript provided by the Commissioner. *See docs. 14-1* to *14-9*.[2]  On April 26, 2017, Hendricks filed an application for Social Security disability benefits, alleging disability beginning March 1, 2017. *Admin Tr.* at 15. His claim was denied on August 10, 2017. *Id.*  On September 1, 2017, Hendricks filed a written request for a hearing, which was held on October 29, 2018.  *Id.* Hendricks appeared and testified at the hearing with the assistance of counsel. *Id.* Hendricks amended his alleged onset date of disability to March 3, 2018. *Id.*

On January 9, 2019, Administrative Law Judge Richard E. Guida ("ALJ") determined that Hendricks had not been disabled within the meaning of the Social Security Act from March 3, 2018 through the date of the decision. *Id.* at 15, 24. And so, he denied her benefits. *Id.*   Hendricks appealed the ALJ's decision to the Appeals Council, which denied his request for review on April 20, 2020. *Doc. 1* at 4.  This makes the ALJ's decision the final decision of the Commissioner subject to judicial review by this Court.

On June 22, 2020, Hendricks began this action by filing a complaint claiming that the Commissioner's decision is not supported by substantial evidence and is contrary to law and regulation. *Doc*. *1* ¶ 8.  He requests that the court find

---

[2] The facts of the case are well known to the parties and will not be repeated here. Instead, we will recite only those facts that bear on Hendricks' claims.

that he is entitled to Social Security benefits or remand the case for a further hearing. *Id.* at ¶¶, 1-2.  The Commissioner filed an answer to the complaint and a transcript of the proceedings that occurred before the Social Security Administration. *Docs. 13-14.*  The parties consented to proceed before a magistrate judge pursuant to 28 U.S.C. § 636(c), and the case was referred to the undersigned. *Doc. 16.*  The parties then filed briefs, *see docs. 19*, *20, 23*, and this matter is ripe for decision.

## III.  Legal Standards.

### A. Substantial Evidence Review—the Role of This Court.

When reviewing the Commissioner's final decision denying a claimant's application for benefits, "the court has plenary review of all legal issues decided by the Commissioner." *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). But the court's review of the Commissioner's factual findings is limited to whether substantial evidence supports those findings. *See* 42 U.S.C. § 405(g); *Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019).  "[T]he threshold for such evidentiary sufficiency is not high." *Biestek*, 139 S. Ct. at 1154.  Substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

Substantial evidence "is less than a preponderance of the evidence but more than a mere scintilla." *Jesurum v. Sec'y of U.S. Dep't of Health & Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995).  A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's] finding from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).  "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F.Supp.2d 623, 627 (M.D. Pa. 2003).

The question before this court, therefore, is not whether Hendricks is disabled, but whether substantial evidence supports the Commissioner's finding that he is not disabled and whether the Commissioner correctly applied the relevant law.

### B. Initial Burdens of Proof, Persuasion, and Articulation for the ALJ.

To receive benefits under Title XVI of the Social Security Act, a claimant generally must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected

to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.905(a).  To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful work that exists in the national economy. 42 U.S.C. § 1382c(a)(3)(B); 20 C.F.R. § 416.905(a).

The ALJ follows a five-step sequential-evaluation process to determine whether a claimant is disabled. 20 C.F.R. § 416.920.  Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience, and residual functional capacity ("RFC"). 20 C.F.R. § 416.920(a)(4)(i)–(v).

The ALJ must also assess a claimant's RFC at step four. *Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 198 n.2 (3d Cir. 2019).  The RFC is "'that which an individual is still able to do despite the limitations caused by his or her impairment(s).'" *Burnett v Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (quoting *Hartranft v. Apfel*, 181 F.3d 358, 359 n.1 (3d Cir. 1999)); *see also* 20 C.F.R. § 416.945(a)(1).  In making this assessment, the ALJ considers all the

claimant's medically determinable impairments, including any non-severe impairment identified by the ALJ at step two of his or her analysis. 20 C.F.R. § 416.945(a)(2).

"The claimant bears the burden of proof at steps one through four" of the sequential-evaluation process. *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010). But at step five, "the burden of production shifts to the Commissioner, who must . . . show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity." *Fargnoli v. Massanari*, 247 F.3d 34, 39 (3d Cir. 2001).

The ALJ's disability determination must also meet certain basic substantive requisites. Most significantly, the ALJ must provide "a clear and satisfactory explication of the basis on which" his or her decision rests. *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). "The ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F. 3d 429, 433 (3d Cir. 1999). The "ALJ may not reject pertinent or probative evidence without explanation." *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 204 (3d Cir. 2008). Otherwise, "'the reviewing court cannot tell if significant probative evidence was not credited or simply ignored.'" *Burnett*, 220 F.3d at 121 (quoting *Cotter*, 642 F.2d at 705).

**IV. The ALJ's Decision Denying Hendricks' Claim.**

On January 9, 2019, the ALJ denied Hendricks' claim for benefits. *Admin. Tr.* at 15.  At step one of the sequential-evaluation process, the ALJ found that Hendricks had not engaged in substantial gainful activity since March 3, 2018, the alleged onset date. *Id*. at 17.  At step two of the sequential-evaluation process, the ALJ found that Hendricks had the following severe impairments: abdominal pain, diverticulosis, status post hernia surgery, and obesity. *Id.*

At step three of the sequential-evaluation process, the ALJ found that Hendricks did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id*.  Specifically, the ALJ discussed Listing 5.06 in connection with Hendricks' abdominal pain and diverticulosis. *Id*. at 18.  The ALJ determined that Hendricks did not meet the listing. *Id*.

The ALJ then determined that Hendricks has the RFC to perform light work[3] with some limitations. *Id*.  He can perform light work "except with up to frequent

---

[3] *See* 20 C.F.R. § 416.967(b) ("Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional

use of ramps and stairs; frequent balancing and kneeling; up to occasional use of ladders, ropes, and scaffolds; and occasional stooping, crouching, and crawling. *Id*. In making this RFC assessment, the ALJ reviewed Hendricks' assertions, his friends and family's assertions, his activities of daily living, his treatment records, and the opinion evidence in the record. *Id*. at 18-22.

At step four of the sequential-evaluation process, the ALJ found that Hendricks was capable of performing past relevant work as a production assembler. *Id*. at 22.  At step five of the sequential-evaluation process, considering Hendricks' age, education, work experience, and RFC, as well as the testimony of a vocational expert, the ALJ found that there were jobs—such as bakery racker, housekeeper/cleaner, and bindery machine bearer—that exist in significant numbers in the national economy that Hendricks could perform, as well as his previous job as a production assembler. *Id*. at 22-23.  In sum, the ALJ concluded that Hendricks was not disabled from March 3, 2018, through the date of his decision on January 9, 2019. *Id*. at 24.  Thus, the ALJ denied Hendricks SSI benefits. *Id*.

---

limiting factors such as loss of fine dexterity or inability to sit for long periods of time.").

**V. Discussion.**

Hendricks argues that the ALJ's RFC findings are not supported by substantial evidence because the ALJ improperly weighed the opinion evidence, particularly the opinion of the consultative examiner, William Wolfe, M.D. ("Dr. Wolfe").  Hendricks also argues that the ALJ erred in relying on the opinion of the State agency medical consultant, Navjeet Singh, M.D. ("Dr. Singh").  We conclude that the ALJ did not err in weighing the opinion evidence and that his decision is supported by substantial evidence.

Because Hendricks' claims concern the ALJ's handling of opinion evidence, we start with a brief overview of the regulations regarding opinion evidence.  The regulations in this regard are different for claims filed before March 27, 2017, on the one hand, and for claims, like Hendricks', filed on or after March 27, 2017, on the other hand.  Specifically, the regulations applicable to claims filed on or after March 27, 2017, ("the new regulations") changed the way the Commissioner considers medical opinion evidence and eliminated the provision in the regulations applicable to claims filed before March 27, 2017, ("the old regulations") that granted special deference to opinions of treating physicians.

The new regulations have been described as a "paradigm shift" in the way medical opinions are evaluated. *Densberger v. Saul*, No. 1:20-CV-772, 2021 WL 1172982, at *7 (M.D. Pa. Mar. 29, 2021).  Under the old regulations, "ALJs were

required to follow regulations which defined medical opinions narrowly and created a hierarchy of medical source opinions with treating sources at the apex of this hierarchy." *Id*.  But under the new regulations, "[t]he range of opinions that ALJs were enjoined to consider were broadened substantially and the approach to evaluating opinions was changed from a hierarchical form of review to a more holistic analysis." *Id*.

Under the old regulations, the ALJ assigns the weight he or she gives to a medical opinion. 20 C.F.R. §§ 404.1527(c), 416.927(c).  And if "a treating source's medical opinions on the issue(s) of the nature and severity of [a claimant's] impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record," the Commissioner "will give it controlling weight." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  Under the old regulations, where the Commissioner does not give a treating source's medical opinion controlling weight, it analyzes the opinion in accordance with a number of factors: the "[l]ength of the treatment relationship and the frequency of examination," the "[n]ature and extent of the treatment relationship," the "[s]upportability" of the opinion, the "[c]onsistency" of the opinion with the record as whole, the "[s]pecialization" of the treating source, and any other relevant factors. *Id*. at §§ 404.1527(c)(2)–(c)(6), 416.927(c)(2)–(c)(6).

10

Under the new regulations, however, the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a).  Rather than assigning weight to medical opinions, the Commissioner will articulate "how persuasive" he or she finds the medical opinions. 20 C.F.R. §§ 404.1520c(b), 416.920c(b).  And the Commissioner's consideration of medical opinions is guided by the following factors: supportability; consistency; relationship with the claimant (including the length of the treatment relationship, the frequency of examinations, the purpose of the treatment relationship, the extent of the treatment relationship, and the examining relationship); specialization of the medical source; and any other factors that tend to support or contradict the opinion. 20 C.F.R. §§ 404.1520c(c), 416.920c(c).  The most important of these factors are the "supportability" of the opinion and the "consistency" of the opinion. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  As to supportability, the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1).  And as to consistency, those regulations

11

provide that "[t]he more consistent a medical opinion(s) or prior administrative

medical finding(s) is with the evidence from other medical sources and nonmedical

sources in the claim, the more persuasive the medical opinion(s) or prior

administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(2),

416.920c(c)(2).

The ALJ must explain how he or she considered the "supportability" and

"consistency" of a medical source's opinion. 20 C.F.R. §§ 404.1520c(b)(2),

416.920c(b)(2).  Generally, the ALJ may, but is not required to, explain his or her

consideration of the other factors. *Id*.  But if there are two equally persuasive

medical opinions about the same issue that are not exactly the same, then the ALJ

must explain how he or she considered the other factors. 20 C.F.R.

§§ 404.1520c(b)(3), 416.920c(b)(3).

**A. Hendricks argues that the ALJ erred in evaluating Dr. Wolfe and Dr.
Singh's opinions, and thus, the ALJ's RFC findings are not based on
substantial evidence.**

Hendricks contends that the ALJ's RFC findings are not based on substantial

evidence because the ALJ improperly evaluated the opinion evidence of Dr. Wolfe

and Dr. Singh.  By way of background, Dr. Wolfe examined Hendricks on July 13,

2017. *Admin. Tr.* at 20.  Dr. Wolfe found that Hendricks could lift and carry up to

20 pounds, occasionally lift and carry 21 to 50 pounds, and never lift and carry

more than 50 pounds. *Admin. Tr.* at 363.  Dr. Wolfe also found that Hendricks

could sit for eight hours, stand for one hour, and walk for one hour total in an eight-hour workday. *Id*. at 364.  Dr. Wolfe noted that Hendricks appeared to be in mild distress, secondary to lower abdominal pain, and had an antalgic gait. *Id*. at 361.  Additionally, Dr. Wolfe found that Hendricks could walk on his heels and toes with some difficulty, could only squat halfway, his abdomen was tender in the super pubic area, and Hendricks had abdominal pain, right-sided diverticulosis, and hypertension. *Id*. at 361-362.

The ALJ found Dr. Wolfe's opinion to be unpersuasive. *Id*. at 21.  The ALJ noted that he found Dr. Wolfe's severe limitations on Hendricks' standing and walking abilities to be inconsistent with Hendricks' capacity to lift and carry objects at the levels established for medium exertional level work. *Id*. Additionally, the ALJ noted that Dr. Wolfe's limitations on Hendricks' standing and walking abilities did not correspond to Dr. Wolfe's own examination findings, including the findings of no musculoskeletal abnormalities, full muscle strength in all extremities and normal range of motion. *Id*.  The ALJ also found Dr. Wolfe's opinion to be inconsistent with treatment notes that indicated Hendricks' abdomen was nontender, that he had no hernia, that his bowel sounds were normoactive, and that he had a normal and steady gait. *Id*.

On July 29, 2017, Dr. Singh reviewed Hendricks' medical records and issued an opinion regarding Hendricks' limitations and capabilities. *Id*. at 55-56. Dr. Singh found that Hendricks could:

> [O]ccasionally lift, carry, push, and pull 20 pounds; frequently lift carry, push, and pull 10 pounds; stand or walk about six hours in an eight-hour day; sit about six hours in an eight-hour day; frequently climb ramps and stairs; occasionally climb ladders, ropes or scaffolds; frequently balance and kneel; and occasionally stoop, crouch, and crawl.

*Id*. at 20 (citing *Admin. Tr.* at 55-56).

The ALJ found Dr. Singh's opinion persuasive because Dr. Singh is familiar with the agency's rules and regulations and that it was supported with findings from the medical record. *Id*. at 20.  Additionally, the ALJ found Dr. Singh's opinion to be consistent "with treatment notes demonstrating that the claimant's abdomen was nontender; that he had no hernia; that his bowel sounds were normoactive; and that he had a normal and steady gait." *Id*.

Hendricks argues that the ALJ's RFC finding that he was capable of light work is not supported by substantial evidence because the ALJ failed to properly consider Dr. Wolfe's opinion.  Hendricks also argues that the Dr. Wolfe's opinion regarding walking and standing limitations was not inconsistent and that the ALJ erred in finding the opinion inconsistent.  Hendricks contends that Dr. Wolfe provided a function assessment of Hendricks' capabilities and that Dr. Wolfe's review of the lifting and walking/standing limitations is consistent with an

14

individual diagnosed with abdominal pain, right-sided diverticulosis, and hypertension.

Additionally, Hendricks argues that the ALJ erred in finding that Dr. Wolfe's opinion was inconsistent with treatment notes indicating that Hendricks' abdomen was nontender, that he had no hernia, that his bowel sounds were normoactive, and that he had a normal and steady gait. *Id*. at 21.  Hendricks asserts that the ALJ ignored other evidence of record that supported Dr. Wolfe's opinion, namely, emergency room notes for when Hendricks sought treatment for a flare up of diverticulitis, 2016 notes regarding colon surgery discussions, and Hendricks' continued reports of pain. *Id*. at 281, 331, 341, 393, 397, 414, 425, 426, 437. Hendricks contends that the ALJ, as a lay person, rejected medical evidence in favor of his own credibility judgments.

Hendricks also claims that the ALJ erred in finding that Hendricks' daily life activities supported an RFC finding that he is capable of light work.  Hendricks claims that his daily life activities of folding laundry twice a week, going shopping with the assistance of an electric scooter once or twice a week, needing help to lift grocery bags from his vehicle, and driving are not inconsistent with Dr. Wolfe's opinion regarding disability. *Id*. at 186, 187, 364.  Further, Hendricks contends that these activities are not comparable to a full-time job and they can all be done with the option to sit and receive assistance.

Hendricks further argues that Dr. Wolfe's opinion is only contradicted by Dr. Singh's opinion.  Hendricks contends that Dr. Wolfe's opinion should be afforded more weight because he examined Hendricks and Dr. Singh did not. Hendricks claims that Dr. Singh's opinion is speculative and based on the projected outcome of Hendricks' treatment.  Specifically, Hendricks notes that Dr. Singh's opinion indicated that Hendricks' symptoms were resolving and that he would continue to improve barring unforeseen complications. *Id*. at 54, 56. Hendricks argues that Dr. Singh's opinion was inaccurate because Hendricks continued to experience debilitating pain. *Id*. at 375, 377, 379, 414, 425, 435.

Hendricks contends that had Dr. Wolfe's opinion been properly credited, the ALJ would not have found that Hendricks is capable of light work in the RFC assessment.  Hendricks claims that the vocational expert's testimony concerning Hendricks' ability to perform work was erroneous because the ALJ did not ask questions that accurately portray Hendricks' alleged impairments.  Hendricks argues that the ALJ demurred to discuss sedentary work and that he never asked the vocational expert about the impact that sitting all day would have on the jobs proffered.  According to Hendricks, had the ALJ adequately credited Dr. Wolfe's opinion, Hendricks' limitations would reduce him to only being capable of sedentary work.  Thus, considering Hendricks's limited education and unskilled past relevant work, an RFC that limited him to sedentary exertion based on the

amount of time he can stand/sit would result in a finding of disability per the Medica-Vocational Rules.

### B. The ALJ's evaluation of Dr. Wolfe's opinion, Dr. Singh's opinion, and subsequent RFC assessment is based on substantial evidence.

Dr. Wolfe opined that Hendricks could stand for one hour and walk for one hour total in an eight-hour day; however, he also found that Hendricks could lift and carry up to 20 pounds (for 1/3 to 2/3 of an eight-hour day) and lift and carry 50 pounds occasionally (for 1/3 of an eight-hour day). *Id*. at 363-364.  The ALJ noted this inconsistency by stating "[t]he severe limitations on standing/and or walking are inconsistent with Dr. Wolfe's opinion that the claimant could lift and carry objects at the levels established for work at the medium exertional level." *Id*. at 21. The ALJ correctly noted that Dr. Wolfe's opinion found that Hendricks could only walk/stand for 30 minutes of an eight-hour day, but that Hendricks could also lift/carry for 1/3 to 2/3 of an eight-hour day.  In his reply brief, Hendricks argues that lifting does not require a person to stand or walk.  This argument is unpersuasive, as Dr. Wolfe's opinion also states that Hendricks can carry objects for 1/3 to 2/3 of an eight-hour day, which of course, carrying involves ambulation.[4]

_____

[4] In his reply brief, Hendricks argues that the ALJ considered the amount of weight that Hendricks could handle and not the amount of time spent lifting/carrying. *Doc. 23* at 4.  Because this argument was first raised in Hendricks' reply brief, we need not reach this issue; however, we note that immediately following the ALJ's

Accordingly, we find that the ALJ correctly identified an inconsistency in Dr. Wolfe's opinion.

Additionally, the ALJ also noted that Dr. Wolfe's opinion regarding Hendricks' standing and walking limitations do not correspond to Dr. Wolfe's own examination findings. *Id*. Specifically, the ALJ noted that Dr. Wolfe found no musculoskeletal abnormalities, full muscle strength in all extremities, and normal range of motion. *Id*. Hendricks argues that Dr. Wolfe's opinion is consistent because, despite the findings noted by the ALJ, Dr. Wolfe also found that Hendricks appeared to be in mild distress, secondary to lower abdominal pain, and had an antalgic gait. *Id*. at 361. Yet, the ALJ addressed these issues in his summary of Dr. Wolfe's report. *Id*. at 20. To the extent that Hendricks asks this Court to re-weigh the record evidence or make new factual findings, this Court may not invade the ALJ's province as finder of fact in disability proceedings, for "our inquiry is not whether an alternate conclusion could have been reached but whether substantial evidence supported the ALJ's decision." *See Daub v. Colvin*, No. 3:15–CV–1066, 2015 WL 8013037, at *9 (M.D. Pa. Dec. 7, 2015).

Hendricks also contends that the ALJ erred in finding that Dr. Wolfe's opinion was inconsistent with treatment notes indicating that Hendricks' abdomen

---

discussion regarding Dr. Wolfe's lifting/carrying finding inconsistency, the ALJ notes that Dr. Wolfe's standing/walking limitations do not correspond to Dr. Wolfe's own examination findings. *Admin. Tr.* at 21.

was nontender, that he had no hernia, that his bowel sounds were normoactive, and that he had a normal and steady gait. *Id.* at 21.  We find, however, that the ALJ did not err in finding Dr. Wolfe's opinion was inconsistent with treatment notes, and that the ALJ properly cited evidence in the record that supports his finding. *Id.* (citing *Admin. Tr.* at 281, 331, 343, 393, 414, 426, 437).  Specifically, the ALJ cited to an emergency room hospital report which indicated Hendricks' gait was steady. *Id.* at 21 (citing *Admin. Tr.* at 281).  The ALJ also cited to treatment records, ranging from June 22, 2016, through June 12, 2018, which found Hendricks' bowel sound normoactive, his abdomen to be nontender, and that Hendricks has no hernias. *Id.* at 21 (citing *Admin. Tr.* at 331, 343, 393, 397, 414, 437).  The ALJ may choose which medical evidence to credit and which to reject as long as there is a rational basis for the decision. *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999).  Here, the ALJ provided adequate justification as to why he found Dr. Wolfe's opinion to be inconsistent with the treatment records.  Accordingly, we find that the ALJ's determination that Dr. Wolfe's opinion was inconsistent with the treatment records is based on substantial evidence.

Hendricks also argues that his limited daily living activities support Dr. Wolfe's opinion and that the ALJ improperly considered them when determining Hendricks' disability.  Hendricks contends that daily living activities can only support an adverse credibility finding if "(1) the activities of daily living indicate

19

that a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting or (2) the activities of daily living contradict other allegations by the claimant, rendering them internally inconsistent." *Doc. 19* at 11.  But the ALJ specifically discussed Hendricks' daily activities and noted that they are "not limited to the extent one would expect, given his [Hendricks] complaints of disabling symptoms and limitations." *Admin. Tr.* at 21.  The ALJ considered Hendricks' daily living activities insofar as they appeared to contradict other allegations made by Hendricks.  As such, the ALJ permissibly considered Hendricks' daily life activities, along with additional medical evidence of record in finding greater functioning than Hendricks alleged.

Hendricks argues that Dr. Wolfe's opinion is only contradicted by Dr. Singh's opinion.  According to Hendricks, Dr. Wolfe's opinion should be afforded more weight than Dr. Singh's opinion because Dr. Wolfe examined Hendricks. The Commissioner correctly points out that the new regulations emphasize supportability and consistency over a medical source's treatment relationship with the claimant. *See* C.F.R. § 404.1520c(b)(2).  Here, the ALJ adequately explained that he found Dr. Singh's opinion to be more consistent with the overall treatment record and cited to numerous instances in which Dr. Singh's opinion agreed with the medical record. *Admin. Tr.* at 20.  "[A]n ALJ may give more weight to a non-

examining professional's opinion if that opinion is better supported by the record."
*Conley v. Colvin*, No. 15-CV-2261, 2016 WL 1255315, at *2 n.1 (W.D. Pa. Mar.
31, 2016) (citing *Salerno v. Comm'r of Soc. Sec.*, 152 Fed. Appx. 208 (3d Cir.
2005)).

Additionally, Hendricks contends that Dr. Singh's findings were speculative
because he stated that "barring unforeseen complications the above proposed
projected RFC is reasonably supported as of 2/28/18." *Doc. 19* at 13; *see Admin.
Tr.* at 56.  Hendricks argues that Dr. Singh's opinion was not accurate because
Hendricks alleges that he continued to experience debilitating pain.  While the ALJ
must consider Hendricks' complaints of pain, he must also make a credibility
determination when those complaints are unsupported by the evidence. *See Mason
v. Shala*, 994 F.2d 1058, 1067 (3d Cir. 1993).  Here, the ALJ relied on imaging that
did not show pathology to cause Hendricks' alleged complaints. *Admin. Tr.* at 20-
21; *see Id.* at 378, 388, 414, 424.

In sum, the ALJ chose between contrasting medical opinions, giving greater
weight to those opinions which he found were more congruent with Hendricks'
medical records and activities of daily living.  It is the right and responsibility of
the ALJ to make such assessments, and we find that substantial evidence supported
the ALJ's decision.  "We will not set the Commissioner's decision aside if it is
supported by substantial evidence, even if we would have decided the factual

inquiry differently." *Hartranft*, 181 F.3d at 360.  Hendricks' argument simply asks the court to reweigh the evidence, which we cannot do. *See Messina v. Comm'r of Soc. Sec.*, No. 20-1884, 2021 WL 422444, at *3 (3d Cir. Feb. 8, 2021) ("Yet we cannot reweigh the evidence or make our own factual determinations."); *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005) (stating that the court may not weigh the evidence or substitute our conclusions for those of the ALJ). Because we are not permitted to reweigh the evidence, we conclude that the ALJ did not err in his consideration of the opinion evidence of record.

According to Hendricks, the ALJ's RFC determination is not supported by substantial evidence because Dr. Wolfe's opinion was not properly credited. Hendricks further argues that had Dr. Wolfe's opinion been properly considered, Hendricks' limitations would reduce him to sedentary work, which coupled with Hendricks' age, limited education, and unskilled past relevant work, would have resulted in a disability per the Medical-Vocational rules.  Because we have already found that the ALJ properly evaluated Dr. Wolfe's opinion, we find that the ALJ's RFC assessment of Hendricks is based on substantial evidence.

## VI. Conclusion.

For the foregoing reasons, the decision of the Commissioner will be affirmed, and final judgment will be entered in favor of the Commissioner and

against Hendricks.  An appropriate order follows.

        ***S/Susan E. Schwab***
        Susan E. Schwab
        United States Magistrate Judge